UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(DAVENPORT DIVISION)

|  |  |
|---|---|
| MCKESSON CORPORATION, a Delaware corporation, | Case No. |
| Plaintiff, | |
| v. | COMPLAINT |
| SMARTSCRIPTS LLC, an Iowa limited liability company; THOMPSON & THOMPSON LONG TERM CARE, INC., an Iowa corporation; TODD THOMPSON, an individual; and SAMUEL ZOSKE, an individual, | |
| Defendants. | |

Plaintiff McKesson Corporation ("Plaintiff" or "McKesson"), by its undersigned counsel, as and for its Complaint, against Defendants SmartScripts LLC ("SmartScripts"), Thompson & Thompson Long Term Care, Inc. ("TTLTC"), Todd Thompson ("Thompson"), and Samuel Zoske ("Zoske") (Thompson and Zoske, together, the "Guarantors"; Guarantors together with SmartScripts and TTLTC collectively, the "Defendants"), alleges and states as follows:

## **PARTIES**

1.      Plaintiff McKesson Corporation is a corporation duly organized and existing under the laws of the State of Delaware, is currently in good standing, and has been so at all times pertinent to these causes of action. McKesson's principal place of business is located at 6555 State Hwy 161, Irving, Texas 75039.

2.    Defendant SmartScripts LLC is a limited liability company organized under the laws of the State of Iowa. Upon information and belief, SmartScripts's principal place of business is located at 1010 W Madison Street, Washington, Iowa 52353. Upon information and belief, the members of SmartScripts are a combination of the following individuals: (i) Todd Thompson; (ii) Samuel Zoske; and (iii) Bruce Rastetter, and each of the foregoing individual members are citizens of the State of Iowa for diversity purposes. SmartScripts can be served through its registered agent for service, Todd Thompson, 1010 West Madison Street, Washington, Iowa 52353; or wherever he may be found.

3.    Defendant Thompson & Thompson Long Term Care, Inc. is a corporation organized under the laws of the State of Iowa. Upon information and belief, TTLTC's principal place of business is located at 1010 W Madison Street, Washington, Iowa 52353. TTLTC can be served through its registered agent for service, Craig A. Davis, 211 W. Washington Street, Washington, Iowa 52353; or wherever he may be found.

4.    Defendant Todd Thompson was, at all times relevant herein, and is a natural person domiciled in Iowa City, Iowa, and, therefore, a citizen of Iowa. McKesson is further informed and believes, and based thereon alleges, that Thompson is also known as Todd Richard Thompson and also as Todd R. Thompson. Thompson guaranteed SmartScript's obligations to McKesson. Thompson may be served at his last known address of 3936 W. Overlook Road NE, Iowa City, Iowa 52240; or wherever he may be found.

5.    Defendant Samuel Zoske was, at all times relevant herein, and is a natural person domiciled in Solon, Iowa, and, therefore, a citizen of Iowa. McKesson is further informed and believes, and based thereon alleges, that Zoske is also known as Samuel

Jordan Zoske, Samuel J. Zoske and Sam Zoske. Zoske guaranteed SmartScript's obligations to McKesson. Zoske may be served at his last known address of 728 Raymond Drive, Solon, Iowa 52333; or wherever he may be found.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of the value of $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and the Defendants.

7.    This Court has personal jurisdiction over the parties because Defendants are either organized pursuant to the laws of the State of Iowa, have principal places of business in Iowa, regularly transact substantial business in Iowa, are located in Iowa and/or reside in Iowa.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**A.    The Credit Application With McKesson**

9.    On or about March 23, 2015, SmartScripts applied, in writing, for credit with McKesson Corporation, and its affiliated companies, for the purchase of pharmaceutical products from McKesson. In doing so, SmartScripts executed a customer application on March 23, 2015 (the "Credit Application"). A true, correct and complete copy of the Credit Application (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 1**.

10.    In the Credit Application, SmartScripts agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing SmartScripts's account. Further, SmartScripts agreed to pay for all purchases, fees and other charges incurred by SmartScripts or an authorized user on account of SmartScripts, including service charges on past due amounts at the highest rate permitted by law. Moreover, SmartScripts agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by SmartScripts.

**B.    <u>The Guaranty by Thompson and Zoske</u>**

11.    On or about March 23, 2015, the Guarantors each delivered to McKesson an executed Guaranty (the "Guaranty"), in favor of McKesson, to induce McKesson to do business with SmartScripts. A copy of the Guaranty is attached hereto as **<u>Exhibit 1</u>**.

12.    In the Guaranty, the Guarantors' absolutely, unconditionally and irrevocably guaranteed, as primary obligor, the full and prompt performance when due, of all of the obligations SmartScripts then owed, or incurred and owed in the future to McKesson.

13.    The Guarantors also agreed that their obligations under the Guaranty shall not be discharged as a result of, or otherwise affected by, any invalidity or unenforceability against SmartScripts of any of its obligations for any reason, or the insufficiency, invalidity, unenforceability or failure of perfection of, any security for the obligations of SmartScripts.

14.     In the Guaranty, Guarantors agreed (a) to pay on demand (i) all sums due and to become due to McKesson from SmartScripts, (ii) all losses, costs, attorney's fees or expenses which may be suffered by McKesson by reason of SmartScripts's default on the obligations; and (iii) any deficiency resulting from a sale of security held by McKesson even if the sale is made without notice to Guarantors, and (b) perform all of SmartScripts's obligations owed to McKesson, without McKesson first having to proceed against SmartScripts.

15.     In the Guaranty, Guarantors also waived notice of McKesson's acceptance of the Guaranty and of presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to McKesson by SmartScripts.

16.     Guarantors also agreed to pay, on demand, all of McKesson's losses, costs, attorneys' fees or expenses incurred by McKesson in connection with the enforcement or attempted enforcement or preservation of any rights or interests under the Guaranty.

**C.    The Supply Agreement.**

17.     Effective as of April 28, 2017, McKesson, on one hand, and SmartScripts and TTLTC, on the other hand, entered into a certain Supply Agreement (the "Supply Agreement").

18.     Among other things, the Supply Agreement sets forth the agreed terms of sale and agreed prices that would be applicable to sales of pharmaceutical products to SmartScripts and TTLTC.

19.    Under the terms of the Supply Agreement, and at SmartScript's request, McKesson sold and delivered certain pharmaceutical products to SmartScripts (the "Goods") and delivered corresponding invoices to SmartScripts (the "Invoices").

20.    SmartScripts received and accepted the Goods without objecting to the price and without identifying any defects in the quality or quantity of the Goods.

21.    SmartScripts also received the respective Invoices and did not dispute any of the information set forth in the Invoices.

22.    As of this date, a balance in the amount of at least $2,174,190.64 is due and owing from SmartScripts to McKesson (the "Goods Balance") on account of the sale and delivery of the Goods.

23.    Despite its receipt and acceptance of the Goods, and despite due demand by McKesson, SmartScripts has failed and continues to refuse to pay the Goods Balance.

24.    The Supply Agreement provides that SmartScripts and TTLTC shall be jointly and severally liable to McKesson for all obligations of each other.

**D.    <u>The Note.</u>**

25.    On or about March 22, 2022, SmartScripts issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "Note") to McKesson for itself and as a collection agent for any of its affiliates, in the amount of $6,324,107.40, together with interest from March 22, 2022 at the rate of 8.50 % per annum. SmartScripts provided the Note to McKesson in an attempt to (i) demonstrate a commitment to pay the SmartScripts account balance, and (ii) induce McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to SmartScripts. A copy of the Note is attached hereto as **<u>Exhibit 2</u>**.

COMPLAINT

26.     Pursuant to the terms of the Note, SmartScripts was required to make 103 consecutive weekly installment payments to McKesson in the amount of $60,808.72 and a final 104th weekly installment payment in the amount of $60,809.24 (the "Weekly Installments"). On the due date of the final installment, SmartScripts was required to pay all remaining principal and all accrued interest.

27.     Under the terms of the Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

28.     In order to secure its obligations under the Note, SmartScripts granted to McKesson a security interest in all of SmartScripts's personal property (the "Collateral").

29.     SmartScripts defaulted under the terms of the Note by failing to make the Weekly Installments when due.

30.     Pursuant to the terms of the Note, as a result of SmartScripts's default under the Note, McKesson is entitled to be paid (a) the unpaid principal balance in the amount of $2,174,190.64, (b) accrued and accruing interest, and (c) all of McKesson's collection costs and reasonable attorney's fees incurred by McKesson in connection with the Note (collectively, the "Unpaid Note Balance").

31.     As of October 2, 2023, the aggregate amount of the Unpaid Note Balance is $2,174,190.64, plus interest and McKesson's costs of collection and reasonable attorney's fees.

32.     Despite due demand, SmartScripts has failed and refused to pay the Unpaid Note Balance.

COMPLAINT

33.     In the Note, SmartScripts agreed to waive any right to a trial by jury in any action to enforce or defend any rights under the Note.

**E.     Demand for Payment.**

34.     Although demand for payment has been made, SmartScripts and TTLTC failed and refused and continue to fail and to refuse to pay to McKesson the amount due and owing on the Invoices.

35.     Despite demand under the Guaranty, the Guarantors have not paid SmartScripts's obligations to McKesson.

**F.     Conditions Precedent And Attorneys' Fees And Costs.**

36.     All conditions precedent to the initiation of this lawsuit have occurred, been performed, or have been waived or excused.

37.     McKesson performed all of the promises, conditions and covenants it agreed to perform pursuant to the terms of the Invoice Agreements, except for those promises, conditions and covenants excused by the acts and omissions of Defendants.

38.     The Credit Application, Guaranty and Note provide that Defendants agree to pay all reasonable attorney fees and expenses or costs incurred by McKesson in enforcing its rights to collect amounts due therefrom. McKesson has retained the law firm of Buchalter, A Professional Corporation and Brick Gentry P.C. and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

## FIRST CLAIM FOR RELIEF
## BREACH OF WRITTEN CONTRACT – CREDIT APPLICATION
### (Against Defendant SmartScripts)

39.     Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein

40.     The Credit Application constitutes an enforceable agreement between McKesson and SmartScripts.

41.     McKesson satisfied its obligations under the terms of the Credit Application.

42.     SmartScripts received and accepted the Goods delivered by McKesson in good condition, without objection and without timely rejection or revocation of acceptance.

43.     SmartScripts breached the Credit Application by, among other things, failing to pay for the Goods when payment was due.

44.     McKesson has been damaged by SmartScripts's breaches.

45.     By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with service charges, interest and McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

## SECOND CLAIM FOR RELIEF
## BREACH OF WRITTEN CONTRACT – SUPPLY AGREEMENT
### (Against Defendants SmartScripts and TTLTC)

46.     Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

COMPLAINT

47.    The Supply Agreement constitutes an enforceable agreement between McKesson, on the one hand, and SmartScripts and TTLTC, on the other hand.

48.    McKesson satisfied its obligations under the terms of the Supply Agreement.

49.    SmartScripts received and accepted the Goods delivered by McKesson in good condition, without objection and without timely rejection or revocation of acceptance.

50.    SmartScripts and TTLTC breached the Supply Agreement by, among other things, failing to pay for the Goods when payment was due.

51.    McKesson has been damaged by SmartScripts's and TTLTC's breaches.

52.    By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with service charges, interest and McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

**THIRD CLAIM FOR RELIEF**
**GOODS SOLD AND DELIVERED**
**(Claim Against Defendant SmartScripts)**

53.    Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

54.    McKesson sold the Goods to SmartScripts as requested by SmartScripts.

55.    McKesson and SmartScripts agreed upon the purchase price of the Goods.

56.    SmartScripts received and accepted the Goods without objecting to the price and without identifying any defects in the quality or quantity of the Goods.

57.    Despite its receipt and acceptance of the Goods, and despite due demand by McKesson, SmartScripts has failed and refused to pay the Goods Balance.

58.    McKesson has been damaged by SmartScripts's failure and refusal to pay the Goods Balance.

59.    By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with service charges, interest and McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

## FOURTH CLAIM FOR RELIEF
### ACCOUNT STATED
### (Against Defendants SmartScripts)

60.    Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

61.    McKesson stated an account by delivering the Invoices to SmartScripts identifying the amount owed to McKesson based upon the sale of the Goods.

62.    SmartScripts did not dispute any of the information contained in the Invoices, including without limitation, the amount owed, and/or the quality or quantity of the Goods identified therein.

63.    McKesson has been damaged by SmartScripts' failure and refusal to pay the amounts set forth in the Invoices.

64.    By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with service charges, interest and

COMPLAINT

McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

### FIFTH CLAIM FOR RELIEF
### BREACH OF WRITTEN CONTRACT – NOTE
### (Against Defendant SmartScripts)

65.     Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

66.     In exchange for fair consideration, SmartScripts agreed to pay the amounts due under the Note in accordance with the terms of the Note.

67.     McKesson has fulfilled all of its obligations under the Note.

68.     SmartScripts has breached its obligations under the Note, by among other things, failing to pay the amounts due thereunder.

69.     McKesson has been damaged by SmartScripts failure and refusal to pay the amounts due under the Note.

70.     By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with interest at the rate set forth in the Note and McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

COMPLAINT

## SIXTH CLAIM FOR RELIEF
### BREACH OF CONTRACT - GUARANTY
### (Against Defendants Thompson and Zoske)

71.     Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

72.     The Guaranty constitutes a contract between McKesson and Guarantors.

73.     At all times hereinafter mentioned, McKesson did fully comply with any and all terms and conditions of the Guaranty and provided the Guarantors with fair consideration in exchange for the Guaranty.

74.     McKesson has demanded payment in full from the Guarantors under the Guaranty.

75.     The Guarantors have failed and refused to pay the amounts due under the Guaranty.

76.     The Guarantors' failure and refusal to pay the amount due to McKesson under the Guaranty constitutes a breach of the Guaranty.

77.     By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with service charges, interest and McKesson's costs of collection and reasonable attorney's fees, according to proof at time of trial or entry of judgment.

## SEVENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Alternative Claim Against Defendants SmartScripts and TTLTC)

78.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 38 above, as if those allegations were set more fully forth herein, with the exception of any allegation as to the existence of a contract between SmartScripts and/or TTLTC, on the one hand, and McKesson, on the other hand.

79.    In the alternative, should this Court find no express contract between McKesson and SmartScripts and/or TTLTC, and/or this Court does not grant the full relief requested under the First through Fifth Claims for Relief, McKesson asserts this claim for unjust enrichment.

80.    McKesson conferred a benefit upon SmartScripts by selling and delivering to SmartScripts, the Goods with a total value in an amount not less than $2,174,190.64.

81.    SmartScripts has appreciated, acknowledged and retained the benefit of the Goods.

82.    As of the date of this Complaint, not less than $2,174,190.64 is owed to McKesson on account of SmartScripts's receipt of the Goods.

83.    SmartScript's retention of the benefit of the Goods, and its refusal to pay for same is improper, unconscionable and contrary to the fundamental principles of justice or equity.

84.    By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,174,190.64, together with interest and McKesson's costs of

COMPLAINT

collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, McKesson respectfully requests the following relief:

1. Judgment in favor of McKesson on the First Claim for Relief in an amount not less than $2,174,190.64, together with interest and other fees and charges and McKesson's costs of collection and reasonable attorneys' fees;

2. Judgment in favor of McKesson on the Second Claim for Relief in an amount not less than $2,174,190.64, together with interest and other fees and charges and McKesson's costs of collection and reasonable attorneys' fees;

3. Judgment in favor of McKesson on the Third Claim for Relief in an amount not less than $2,174,190.64, together with interest and McKesson's costs of collection and reasonable attorneys' fees;

4. Judgment in favor of McKesson on the Fourth Claim for Relief in an amount not less than $2,174,190.64, together with interest and McKesson's costs of collection and reasonable attorneys' fees;

5. Judgment in favor of McKesson on the Fifth Claim for Relief in an amount not less than $2,174,190.64, together with interest at the rate set forth in the Note and McKesson's costs of collection and reasonable attorneys' fees;

6. Judgment in favor of McKesson on the Sixth Claim for Relief in an amount not less than $2,174,190.64, together with interest and other fees and charges and McKesson's costs of collection and reasonable attorneys' fees;

7.      Judgment in favor of McKesson on the Seventh Claim for Relief in an amount not less than $2,174,190.64, together with interest and McKesson's costs of collection and reasonable attorneys' fees; and

8.      For such other and further legal and equitable relief, including pre-judgment and post-judgment interest, as the Court may deem just and proper.

DATED:  February 22, 2024                BRICK GENTRY P.C.


By: /s/ Nicholas F. Miller
     Nicholas F. Miller (AT0015361)

     6701 Westown Parkway, Suite 100
     West Des Moines, IA 50266
     Telephone: 515.274.1450
     Facsimile:  515.274.1488
     Email: nick.miller@brickgentrylaw.com

     **BUCHALTER**
     A Professional Corporation
     Joanne N. Davies*
     WA State Bar No. 57796
     1420 5th Avenue, Suite 3100
     Seattle, WA 98101
     Telephone: 949.224.6221
     Email:  jdavies@buchalter.com

     * To apply pro hac vice

     Attorneys for Plaintiff
     McKesson Corporation, a Delaware
     Corporation

COMPLAINT

# EXHIBIT 1

# EXHIBIT 1

CAN-154172    DC 145

192748

## MCKESSON
*Empowering Healthcare*

McKesson Corporation and its affiliated companies (collectively referred to as "McKesson")

### CUSTOMER APPLICATION
(Please print in block letters)

CD01-P  V.01-11

Type of Business: ☐Acute ☐Primary Care ☐Specialty ☐Home Health ☐Extended ☐Long Term ☑Pharmacy ☐Closed Door ☐Mail Order ☐Supplier ☐Other_____

| | | | |
|---|---|---|---|
| **SMARTSCRIPTS LLC** | | www.smartscripts.com | Federal Tax ID / EIN |
| Legal Company Name | | Website Address | |
| **1010 W MADISON ST** | | **WASHINGTON** | IA  52353 |
| Legal Address (Main Office) | | City | State  Zip |
| **Sam Zoske** | | **Owner** | **6414859415** |
| Contact Name we may call for questions regarding this application | | Title | Phone |

| | | | |
|---|---|---|---|
| Billing / Statement Address (if different than Main Office) | | City | State  Zip |
| **Caleb Wilson** | **888-853-1043** | **888-653-1063** | **caleb@reliantltc.com** |
| Accounts Payable Contact Person | Accounts Payable Telephone | Accounts Payable Fax | Accounts Payable Email |

Shipping Information: ☐ If more than 1 Ship-to, please attach multiple Ship-to's Information

| | | | |
|---|---|---|---|
| **SMARTSCRIPTS** | | $ **50,000** | $ **50,000** | **5** |
| DBA or Business Trade Name of Account | | Estimated Monthly Purchases | Initial Order | Number of Employees |
| **1010 W Madison St** | | **Washington** | IA  52353 |
| Ship to Address | | City | State  Zip |
| **Todd Thompson** | **888-853-1043** | **888-653-1043** | **todd@reliantltc.com** |
| Ship to Contact Person | Ship to Telephone | Ship to Fax | Ship to Email |

| | | | |
|---|---|---|---|
| **2015** | **2015** | IA | |
| YEAR established | YEAR Current Ownership | State Org | |

Has applicant, applicant's parent or affiliates ever filed for bankruptcy? ☑No ☐Yes, attach explanation

Ownership Type: ☐Proprietorship ☐Partnership ☐Limited Partnership ☑Limited Liability Company ☐Private Corp ☐Public Corp ☐Professional Corp ☐Non-Profit Corp ☐Government

Attached

| | | |
|---|---|---|
| Principal Owner(s) or Stockholder(s) | % Ownership(s) | Social Security Number(s) |

| | | | |
|---|---|---|---|
| **Thompson and Thompson Long Term Care** | Owner | | **641-485-9415** |
| NAME OF CONTROLLING ENTITY (if any) | Applicant's relationship to controlling entity | | Phone |
| **1010 W Madison St** | | **Washington** | IA  52353 |
| Address of Controlling Entity | | City | State  Zip |

REFERENCES:

| | | | |
|---|---|---|---|
| **Iowa State Bank** | | **Alan Rosendal** | **319-347-6671** |
| Primary Bank/Financial Institution | Account Number | Contact Name | Phone |
| **MCKESSON** | | **LAINE SMID** | **630-747-8553** |
| Primary Supply Provider | Account Number | Contact Name | Phone |
| **QS1** | | **MIKE PLINSKI** | **1-800-845-7558 EXT 9 + 1407** |
| Primary Technology Provider | Account Number | Contact Name | Phone |

Additional Information Required (if applicable, please attach these documents to this application):
☐ Copy of Resale/Tax Exemption Certificate — Applied for
☐ Copy of DEA Registration, State Pharmacy License, or Medical License — DEA#  TIN#
☑ Copies of 3 most recent and consecutive primary supplier statements
☑ Annual Financial Statements for the past 2 years (including balance sheet, income statement, and cash flow statements)

Applied For
Medical License # & State

This section applies to all accounts with MCKESSON CORPORATION and its affiliated companies ("McKesson") Customer agrees to abide by (I) standard terms of sale provided or made available on McKesson and/or shown on McKesson's invoices or statements and (II) any written agreement or terms of sale with McKesson governing Customer's account. Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer). Any payment made after the net due date shall result in the loss of any prompt cash payment discount specified on the related invoice or statement and Customer shall pay the gross amount plus any applicable service charges. Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (I) there has been a material adverse change in the financial condition or payment performance or (II) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

Customer represents that it is entitled to discounted prices from manufacturers as it has notified McKesson ("Contract Prices"). In consideration of McKesson allowing Customer to purchase products at Contract Prices, Customer represents that McKesson will be paid by the appropriate manufacturer the difference between McKesson's acquisition price and the Contract Price ("Chargeback") and Customer will be liable to McKesson for any unpaid Chargeback if any manufacturer (I) denies a Chargeback for any reason, (II) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is begun which will substantially impair its ability to pay Chargebacks or (III) fails to pay McKesson Chargebacks for any reason other than McKesson's gross negligence.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating due to race, color, religion, national origin, sex, marital status, age; or because all or part of the Customer's income is from any public assistance program; or the Customer, in good faith, exercises any right under the Consumer Credit Protection Act. The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580 administers compliance with this law. Customer represents and warrants that Customer has read and understands this form and has reviewed the information provided in its entirety, including responses completed for Customer by a McKesson representative, and that all information is complete and correct. Customer agrees that McKesson will be relying on such information and will notify McKesson of any material changes to such information.

Customer agrees to provide McKesson with financial statements upon request. Customer authorizes McKesson, its employees, representatives, and agents to (I) investigate information provided and Customer's credit, financial and banking records, (II) obtain Customer's credit bureau report and (III) share with its affiliates experiential and transactional information regarding Customer and Customer's account. McKesson is authorized to retain information obtained as part of the application process whether or not the requested account and/or credit is granted. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by McKesson in enforcing its rights to collect amounts due from Customer. This form and any account opened in favor of Customer are subject to credit approval by McKesson.

By signing below, the undersigned authorized McKesson to order a consumer report related to the business principal(s) to determine credit eligibility.

| | | | |
|---|---|---|---|
| _Sam Zoski_ | _owner_ | 3/23/15 |
| Authorized Signature | Print Name | Title | Date |

This form must be signed by a Corporate Officer, Partner, Owner or Authorized Agent)

# MCKESSON

McKesson Corporation and its Affiliated Companies (collectively referred to as "McKesson")
## TERMS AND CONDITIONS
(Please print in block letters)

CD03-P  V.09-14

| | |
|---|---|
| Legal Company Name: SMARTSCRIPTS LLC | Customer DBA Name: SMARTSCRIPTS |
| Address: 1010 W MADISON ST | City: WASHINGTON   State: IA   Zip: 52353 |

## CUSTOMER SET UP & AUTHORIZATION FOR ACH (electronic payment)

| | |
|---|---|
| Bank Name: Iowa State Bank | Bank Transit ABA#: ▮▮▮▮▮ |
| Bank Adress: 15811 Main St | Bank Account #: ▮▮▮▮▮ |
| City: Kesley   State: IA   Zip: 50649 | Bank Phone Number: 319-347-6671 |
| Statement-delivery preference: Check ONE: ☑ Email ☐ Fax | |
| Authorized Contact Name: Caleb Wilson | Phone: 888-853-1043   Fax: 888-653-1063 |
| Email: caleb@reliantltc.com | Alternate Contact Name/Phone: |

*************** IMPORTANT: Please attach a copy of a voided check ***************

Customer authorizes McKesson Corporation and its affiliates (collectively referred to as "McKesson") to initiate debit entries from Customer's account indicated above and Customer authorizes the financial institution named above (the "Institution"), to debit the same such account. Authority to initiate debit entries shall remain in full force and effect until McKesson and Institution have received written notice from Customer of its termination of such authorization. Customer understands that Customer has the legal right to stop payment of a debit entry by notification to Institution; provided, prior to such action, Customer shall give McKesson sufficient written notice to permit McKesson to take any necessary actions to avoid disruptions in payments from Customer.

Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer). Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (i) there has been a material change in the Customer's financial condition or payment performance or (ii) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

| | | | |
|---|---|---|---|
| _(signature)_ | SAM ZOSKE | owner | 3/23/15 |
| AUTHORIZED SIGNATURE | Print Name | Title | Date |
| (This section must be signed by a Corporate Officer, Partner, or Authorized Agent) | | | |

This section applies to all accounts with MCKESSON CORPORATION DRUG COMPANY

Please select one: ☐ **Weekly Payment Terms:** Purchases for invoices from Monday – Friday are due by Tuesday of the following week via Automated Clearinghouse (ACH) or other Electronic Funds Transfer (EFT) method acceptable to McKesson. The debit will be initiated by McKesson.

☑ **Semi-Monthly Payment Terms:** Payment is made from statement, with invoices dated from the 1st – 15th due at McKesson's "remit to" address on the 25th and invoices dated from the 16th – the last day of the month due at McKesson's "remit to" address on the 10th of the following month via Automated Clearinghouse (ACH) or other Electronic Funds Transfer (EFT) method acceptable to McKesson. The debit will be initiated by McKesson.

**Security Interest.** In order to secure timely and full payment and performance of all present and future obligations of Customer to McKesson Corporation and any of its affiliates (collectively referred to as "McKesson") (all collectively referred to as the "Obligations"), including, without limitation, all promissory notes, direct loans or sales on credit, Customer hereby grants to McKesson Corporation, for the benefit of McKesson, a security interest in all of Customer's right, title and interest in and to its personal property, whether now owned or hereafter acquired, including, without limitation, all Accounts, Cash, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Health Care Insurance Receivables, Instruments, Inventory, Investment Property, Letter-of-Credit Rights and promissory notes, together with all attachments, replacements, substitutions, additions and accessions, and all Proceeds and products thereof and all books and records relating to any of the foregoing (collectively, the "Collateral"). Capitalized terms used herein that constitute Collateral shall have the meanings given to such terms under the California Uniform Commercial Code. All items of Collateral shall remain personal property and not become part of any real estate regardless of the manner of affixation. The security interest granted hereby shall be deemed to constitute a purchase money security interest in any and all Collateral (including, without limitation, all Goods, Inventory and Equipment) purchased by Customer either directly from McKesson (hereby securing payment of the purchase price) or from a third party using proceeds of loans or advances made by McKesson (thereby securing repayment of such loans or advances). Customer authorizes McKesson to send notices to any other persons claiming a security interest in any of the Collateral. By its signature below, Customer acknowledges that McKesson Corporation shall file a UCC-1 financing statement with the applicable state agency in order to perfect the security interest granted hereby.

| | | | |
|---|---|---|---|
| _(signature)_ | SAM ZOSKE | owner | 3/23/15 |
| AUTHORIZED SIGNATURE | Print Name | Title | Date |
| (This section must be signed by a Corporate Officer, Partner, or Authorized Agent) | | | |

**Guaranty.** The undersigned (individually or collectively, the "Guarantor") hereby jointly and severally guarantees to McKesson Corporation and its affiliates (collectively referred to as "McKesson") that Customer will fully and promptly perform and pay all its present and future obligations to McKesson, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with McKesson or otherwise acquired by McKesson. This guaranty applies to all of Customer's obligations to McKesson, even if such obligations are invalid or unenforceable against Customer for any reason and even if any security for such obligations is insufficient, invalid, unenforceable or not perfected. This guaranty is an absolute and unconditional guaranty of payment. It is a continuing guaranty and covers any future extensions of credit by McKesson to Customer. This guaranty is a guaranty of payment when due and not merely of collectability after judgment or other action against Customer.

McKesson may at any time, without Guarantor's consent, without notice to Guarantor and without affecting or impairing Guarantor's obligations under this guaranty, do any of the following: (I) renew, modify (including any increase or decrease in the rate of interest), or extend any obligations of Customer, all co-guarantors (whether hereunder or under a separate agreement) or of any other party at any time directly or contingently liable for the payment of any of Customer's obligations; (II) enter into additional extensions of credit to Customer; (III) accept partial payments of Customer's obligations; (IV) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of Customer's obligations and the security therefore in any manner; (V) consent to the transfer of security; or (VI) bid and purchase at any sale of security. Guarantor agrees, without McKesson first having to proceed against Customer or any security held by McKesson, to pay on demand (I) all sums due and to become due to McKesson from Customer and (II) all losses, costs, attorney's fees or expenses which may be suffered by McKesson by reason of Customer's default on its obligations or Guarantor's default under this guaranty. Guarantor agrees to pay on demand any deficiency remaining from a sale of security held by McKesson even if the sale is made without notice to Guarantor. Guarantor's obligations under this guaranty are independent of and separate from the obligations of Customer. Upon the occurrence and during the continuance of any default by Customer, McKesson can sue any Guarantor separately from Customer, whether or not McKesson sues Customer in such lawsuit and whether or not McKesson sues Customer in a separate lawsuit. If McKesson elects to proceed with any course of action under this guaranty or against Customer, that election shall not preclude McKesson from taking any other course of action. This guaranty shall not be affected by any termination or change in the relationship between Guarantor and Customer. Guarantor assumes all responsibility for keeping informed of (I) Customer's financial condition and assets, (II) all other circumstances bearing upon the risk of nonpayment of Customer's obligations to McKesson and (III) the nature, scope and extent of the risks which Guarantor assumes and incurs under this guaranty. Guarantor agrees that McKesson shall have no duty to advise Guarantor of information known to McKesson regarding such circumstances or risks. Guarantor waives (I) notice of McKesson's acceptance of this guaranty, (II) presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to McKesson by Customer, (III) any other demands and notices required by law and (IV) all set-offs and counterclaims.

| | | | | |
|---|---|---|---|---|
| Name (Guarantor 1): SAMUEL ZOSKE | Home Address: 1911 Knauwus Dr. | City: Muscatine | State: IA | Zip: 50153 |
| Guarantor 1 Signature: _(signature)_ | | Date: 3/23/15 | SSN#: ▮▮▮▮▮ | |
| (This section must be signed by an owner/principal) | | | | |
| Name (Guarantor 2): TODD Tilorkins | Home Address: 1869 Hwy 22 | City: Kalwa | State: IA | Zip: 52247 |
| Guarantor 2 Signature: _(signature)_ | | Date: 3-23-15 | SSN#: ▮▮▮▮▮ | |
| (This section must be signed by an owner/principal) | | | | |

# EXHIBIT 2

# EXHIBIT 2

**MCKESSON**
**Negotiable Promissory Note (Fixed-Rate / Secured)**

Principal: $ 6,324,107.40          Date: 3/22/22          City & State: Washington,IA

1.   **Principal and Interest.**  For value received, the undersigned "Debtor" promises to pay to McKesson Corporation, a Delaware corporation, for itself and as collection agent for any of its affiliates (collectively "McKesson"), or order, in installments as set forth below, the *principal* sum of  Six million three hundred twenty-four thousand one hundred seven          AND   40   /100 dollars ($ 6,324,107.40   ), together with interest on the unpaid sum from the date hereof until paid in full at a rate of  8.5  % per annum (the "Interest Rate").  All interest shall be computed on the basis of a 360-day year and counting the actual number of days elapsed.

2.   **Payment.**  The outstanding principal amount hereof shall be payable in  104   consecutive installments made on  Friday   of each Week   , commencing  April 29th   , 20 22 .  The first   103   installments shall be in the amount of $ 60,808.72   each, and the final installment shall be in the amount of $ 60,809.24   .  On the due date of such final installment, the outstanding principal amount hereof together with any unpaid accrued interest hereunder shall be due and payable; provided that the full amount of principal shall be due and payable upon the occurrence of any Default (as defined in Section 5 below) and acceleration of the maturity of this Note in accordance with Section 5 below.  In addition to any interest on overdue amounts, Debtor shall pay a late charge equal to 1.50% per month of each payment due hereunder and delinquent ten days or more until the delinquency is paid.  Debtor shall make each payment under this Note in immediately available funds, unconditionally in full without set-off, counterclaim or other defense, on the day when due to McKesson by means of pre-authorized electronic debits by McKesson against an account of Debtor at a bank reasonably acceptable to McKesson, or by such other means as may be acceptable to McKesson.  Each payment received hereunder shall be applied first to accrued interest and the balance, if any, to principal.

3.   **Prepayment.**  Debtor may prepay this Note in whole or in part at any time, without premium or penalty.  Each prepayment shall be accompanied by payment of all interest accrued on the amount of such prepayment.  In no event shall a partial prepayment otherwise excuse or delay the due date of any installment of principal or interest.  If Debtor desires to prepay in full, Debtor shall request a pay-out figure from McKesson.

4.   **Security Interest.**  In order to secure timely and full payment and performance of all present and future obligations of Debtor to McKesson (all collectively referred to as the "Obligations"), including, without limitation, those arising under this Note, Debtor hereby grants to McKesson a security interest in all of Debtor's personal property, including but not limited to, all accounts, general intangibles, chattel paper, documents, letters of credit, instruments, investment property, deposit accounts, inventory, goods, fixtures, and equipment and all books, records, products and proceeds of the foregoing, whether now owned or hereafter acquired ("collectively, the "Collateral"), as such terms are defined in Division 9 of the California Uniform Commercial Code in effect on the date hereof.  This security interest shall continue in effect until all Obligations are fully paid in cash.  Debtor authorizes McKesson to send notices to any other persons claiming a security interest in any of the Collateral.  Debtor acknowledges that McKesson may file a UCC-1 financing statement with the applicable government office in order to perfect the security interested granted hereby.

5.   **Default.**  Failure of Debtor to pay any amount due hereunder within three days after written notice to Debtor that such payment is overdue, or any default under any Security Agreement, constitutes a "Default" under this Note.  McKesson shall be entitled upon any Default to demand payment of the unpaid principal balance and all accrued interest thereon by written notice to Debtor.  Debtor agrees to pay any and all collection costs and reasonable attorney's fees incurred by McKesson in connection herewith.

6.   **Maximum Rate of Interest**.  In no event shall the actual amount of interest paid hereunder exceed the legally permissible rate of interest and if the Interest Rate is deemed to be in excess of the legally permissible rate of interest, any such excess shall first be applied as a repayment of principal.

7.   **Waivers.**  Except as expressly provided in this Note, Debtor waives presentment, protest, notice of every kind including demand, intent to accelerate maturity, and acceleration of maturity, set-offs and counterclaims and expressly agrees that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Debtor hereunder.

8.   **Successors and Assigns.**  This Note may not be assigned by the Debtor without McKesson's prior written consent.  This Note may be assigned by McKesson to: (i) any affiliate of McKesson; (ii) any bank providing accounts receivable securitization or similar financing arrangements to McKesson; and (iii) any other person with Debtor's prior written consent, which shall not be unreasonably withheld.  Subject to the foregoing, the rights and benefits of the Debtor and McKesson shall be binding upon and benefit their respective successors, assigns and transferees.  Following any such assignment, each reference herein to "McKesson" shall be a reference to such assignee.

9.   **Governing Law.**  This Note shall be governed by and construed in accordance with the laws of the State of California (without reference to principles of conflicts of laws that would result in the application of the laws of another jurisdiction).  Any provisions hereof contrary to, prohibited by, or invalid under, applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof.

10.   **Waiver of Jury Trial.**  Debtor waives any right to a trial by jury in any action or proceeding to enforce or defend any rights under this Note or any related agreement or under any amendment, instrument, document or agreement delivered or which may in the future be delivered in connection with this Note, and agrees that any such action or proceeding will be tried before a court and not before a jury.  Debtor agrees that it will not assert any claim against holder on any theory of liability for special, indirect, consequential, incidental or punitive damages.

Debtor:  SMARTSCRIPTS LLC
          Full Legal Name of Entity

By:  *Todd Thompson*
          Signature                                    Todd Thompson
                                                        Print Name

Title: CEO